**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BEST BUY STORES, L.P.,<br><br>     Plaintiff,<br><br>     v.<br><br>FACTORY DIRECT OF SECAUCUS, LLC<br>d/b/a ASHLEY HOME STORES,<br><br>     Defendant. | Case No. 2:23-cv-00161 (BRM) (SDA)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Factory Direct of Secaucus LLC d/b/a Ashley Home Stores'
("Factory Direct") Motion for Partial Summary Judgment on the issue of damages. (ECF No. 75.)
Plaintiff Best Buy Stores L.P. ("Best Buy") filed an Opposition (ECF No. 76), and Factory Direct
filed a Reply (ECF No. 79). Having reviewed and considered the submissions filed in connection
with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil
Procedure 78(b), for the reasons set forth below and for good cause appearing, Factory Direct's
Motion for Partial Summary Judgment (ECF No. 75) is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

In 1986, Mack Edison Co. leased a commercial property in Secaucus, New Jersey, to Tops
Appliance City Inc. (Factory Direct Mot. Br., Ex. C (ECF No. 75-7) at 22.) This lease (the "Master
Lease") was later assigned to Best Buy, who extended the term of the lease until November 1,
2021. (Compl. (ECF No. 1) at 5; Best Buy Opp. Br. (ECF No. 76) at 1.) On December 6, 2005,
Best Buy subleased a portion of the property to Factory Direct (the "Sublease") to be used as an

Ashley Furniture store, which was set to end on October 31, 2021, the day before the Master Lease expired. [1] (ECF No. 75-7 at 4.) According to Best Buy, neither of these termination dates were ultimately honored. (ECF No. 1 at 8.)

As a condition of the sublease, Factory Direct agreed to three relevant conditions. First, before surrendering the property back to Best Buy, Factory Direct was obligated to return the premises to "condition and repair equal to the condition and repair thereof at the commencement of said term." (ECF No. 75-7 at 15.) Second, immediately following that requirement the Sublease laid out the consequences for continuing to "occupy the Subleased Premises, or any part thereof, after the expiration or termination of the Sublease," without formally extending the sublease. (*Id.*) Should Factory Direct hold over the lease, it would have to pay "holdover rent" in the form of a "fixed monthly rent . . . equal to one hundred and fifty percent (150%) of the fixed monthly rent that was due the month immediately prior." (*Id.*) Aside from the termination provisions within the sublease agreement, Factory Direct was also bound by the "covenants and conditions contained in the Master Lease." (*Id.* at 6.) Finally, the Master Lease was attached to the sublease when it was signed, and Factory Direct was as bound by its conditions as Best Buy. (*Id.* at 6, 21.) Because Best Buy was bound to "restore the Demised premises to its pre-existing condition" with "contractors approved by the landlord," so was Factory Direct. (*Id.* at 30.)

To make the store front recognizable as an Ashley Furniture store, and consistent with the Ashely Brand, Factory Direct had to make several alterations and improvements. (Best Buy Statement of Material Facts (ECF No. 76-3) ¶¶ 4–5; Factory Direct Resp. to Statement of Material Facts (ECF No. 79-2) ¶¶ 4–5.) Under the sublease, these improvements were allowed so long as they were first approved by the landlord and Factory Direct restored the premises to the initial

---

[1] Ashley Furniture is a brand owned by Factory Direct.

conditions at the end of the Sublease. (ECF No. 75-7 at 7, 14–15.)

As the end of the Master Lease was approaching in Summer 2021, Best Buy exercised its right under the Master Lease to extend its tenancy an additional three months, to end the last day of January. (Factory Direct Mot. Br., Ex. D (ECF No. 75-8) at 2.) Best Buy had suffered a variety of delays to its move out, but a substantial reason for the extension was Best Buy realized it would be difficult for their team to carry out the clearance and restoration work during the holiday season. (Factory Direct Mot. Br., Ex. E (ECF No. 75-9) at 32–33.)

When the day came for Factory Direct to vacate the premises, the company turned over the keys as promised but did not restore the space to its original condition. (Factory Direct Statement of Material Facts (ECF No. 75-4) ¶ 5; Best Buy Resp. to Statement of Material Facts (ECF No. 76-2) ¶ 5.) Factory Direct left multiple substantial alterations in place after it quit the premises, including:

1) roof line top crown related to an exterior Ashley Furniture sign;

2) stone pillars on the exterior of the building;

3) white trim on the interior perimeter walls;

4) interior walls in the sales floor area;

5) tile flooring;

6) carpet flooring; and

7) a customer service area.

(ECF No. 76-3 ¶ 3; ECF No. 79-2 ¶ 3.) Aside from alterations, Best Buy contends some of the property was damaged when Factory Direct surrendered the premises. (ECF No. 1 ¶ 32.) According to Best Buy, for it to be compliant with the terms of the Master Lease itself, it had to use the lease extension time to conduct necessary repairs to the subleased section of the property

and had to hire contractors at its own expense to restore the alterations. (ECF No. 1 ¶¶ 36–38.)

### B. Procedural History

On January 12, 2023, Best Buy sued Factory Direct, alleging the need to perform these repairs and restorations required substantial labor, the hiring of contractors selected by the landlord, and the extension of the Master Lease. (ECF No. 1 ¶ 16.) As compensation, Best Buy requested "compensatory damages," which it believed was established by the holdover provisions of the Sublease. (*Id.*)

In Factory Direct's Answer, it denied the allegations and asserted an affirmative defense arguing that Best Buy is unable to seek holdover rent as a matter of law. (Ans. (ECF No. 26) ¶ 57 (claiming Best Buy's request for "holdover rent fails to state a cause of action").)

Factory Direct now moves for summary judgment, arguing: (1) Best Buy admits its decision to extend the Master Lease was not caused by Factory Direct, therefore Best Buy cannot recover holdover rent; and (2) mere failure to abide by the Subleases' restoration provision does not make Factory Direct a holdover tenant.[2] (ECF No. 75 at 4.)

Fact discovery concluded on December 13, 2024, and expert discovery concluded on January 15, 2025. The parties met in good faith and attempted to mediate their disputes but were unable to come to an agreement, mutually ending mediation on July 22, 2024. This Motion for Summary Judgment is therefore ripe for consideration.[3]

---

[2] The parties are reminded the undersigned's judicial preferences require briefs to be submitted in a searchable PDF format.

[3] Factory Direct expressed concerns that Best Buy's brief in response to its Motion for Summary Judgment contains an implied cross-motion for summary judgment. (ECF No. 79 at 5.) No formal motion was filed as required by local and federal rule, and the Court does not interpret off-hand remarks in Best Buy's brief to be an attempt to move before the Court.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Additionally, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its

motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson*, 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A

"genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III. DECISION

### A. Whether Best Buy can recover holdover rent does not depend on why it overstayed a different lease.

Best Buy claims by leaving the rental space in such a level of disrepair that it took months to restore, Factory Direct effectively occupied that part of the space for those months. (ECF No. 76 at 5.) Therefore, Best Buy reasons it should be able to collect the money the parties agreed Factory Direct would pay if it overstayed the lease. (*Id.*) Factory Direct disagrees. It maintains even if the property was left in unacceptable condition—which it also disputes—Factory Direct would have ceased to be a tenant when it surrendered the keys since Best Buy would have control of the property from that point forward. (ECF No. 79 at 13.)

A "holdover tenant" is a tenant who overstays a lease on a property and may either be evicted or compelled to pay holdover rent to the landlord for the continued unauthorized occupancy. N.J. Stat. Ann. § 2A:42-5. By statute, holdover rent is set at twice the standard monthly rent agreed upon in the lease in the absence of a contrary agreement. *Id.; see also Mueller v. Conaway*, No. A-0421-23, 2025 WL 880756, at *2 (N.J. Super. Ct. App. Div. Mar. 21, 2025).

Here, the parties negotiated for a less onerous 150% holdover—which Best Buy seeks as damages. In its complaint, Best Buy alleged it was entitled to this holdover rent, in part, because

it was forced to extend its own lease by an additional three months in order to complete the restoration.

Best Buy's own witness later contradicted this specific allegation. In a deposition taken on October 30, 2023, a Senior Director for Best Buy, Kathryn Biene, testified Best Buy was planning to move from the leased location to a new store, but a "variety of delays" caused them to move their plans until "after the holidays" to avoiding putting "stress [on] the team." (ECF No. 75-9 at 31–33.) According to Ms. Biene, this decision was made in "late summer of 2021." (*Id.* at 33.)

Factory Direct argues this is an "admission" by Best Buy, and it had "already determined . . . independently and irrespective of the condition of Factory Direct's subleased portion of the Premises" it would extend the Master Lease. (ECF No. 75 at 8.) However, this argument rests on the assumption Best Buy's entitlement to holdover rent depends on the circumstances of its own extension or holding over—it does not. As Best Buy points out, the holdover rent sought stems from § 21 of the Sublease agreement, not from Best Buy's own extension. (ECF No. 76 No. at 7.) Therefore, summary judgment cannot be granted on this basis.

### B.  There is no dispute Factory Direct timely surrendered the subleased premises.

Factory Direct argues the holdover provisions of the sublease cannot serve as a basis for damages in this case because Factory Direct did in fact surrender the premises—even if it was not in the condition they had agreed to in the agreement. Best Buy believes failure to restore the subleased premises to their rightful condition is, essentially, occupying part of the space and makes Factory Direct liable for holdover damages.

There is no dispute over the key facts. On October 31, 2021—the day the sublease was set to expire—Factory Direct vacated the premises as agreed and turned over its keys to Best Buy. (ECF No. 75 at 6; ECF No. 76 at 7.) After that point, Factory Direct neither accessed nor conducted business on the property related to the Ashley store or the Sublease. (ECF No. 76-2 ¶ 6; ECF No.

79 at 12.) During its time as sublessee, Factory Direct made numerous improvements and alterations to the property which it was contractually obligated to remove and restore to a condition equal to how it was received.[4] (ECF No. 76 at 6; ECF No. 79-2 at 2.) The question for the Court is: did Factory Direct continue to "occupy" the premises in question by failing to abide by the contract's conditions of surrender?

New Jersey Law "limit[s] the holdover penalty period to that period the tenant[] *remain*[*s*] *in the premises*." *Lorril Co. v. La Corte*, 800 A.2d 245, 248 (N.J. Super. Ct. App. Div. 2002) (emphasis added) (holding that tenant did not have to pay double rent on the last half of the month when they moved out halfway through). "It is well-settled law in New Jersey that when a tenant continues to occupy a premises after the termination of a lease, his status becomes that of a month-to-month holdover tenant." *Mueller v. Conaway*, No. A-0421-23, 2025 WL 880756, at *2 (N.J. Super. Ct. App. Div. Mar. 21, 2025). But generally, "after [the tenant] move[s] out and return[s] his keys . . . [he is] no longer in possession." *Escobar v. Miletic*, No. A-2299-18T3, 2020 WL 1062334 at *2 (N.J. Super. Ct. App. Div. Mar. 5, 2020) (citing *Lorril Co.*, 800 A2d. at 248). The only times courts have distinguished this is when the lease agreement itself defines holdover tenancy differently. *See e.g.*, *Natixis N. Am. LLC v. Cal-Harbor V Leasing Assocs., L.L.C.*, No. 21-CV-12800, 2022 WL 14834635 at *9 (D.N.J. Oct. 25, 2022) (denying motion to dismiss claim for holdover tenancy where the contract suggested a "significant amount of property" left by the tenant was sufficient to seek holdover rents).

Best Buy argues occupancy and possession must be determined by the context of the relevant agreement and the use of the property, pointing to *225 Long Avenue, LLC v. Iron*

---

[4] Though the parties dispute the actual condition of the subleased premises, the Court assumes for the purposes of this Opinion that Best Buy's characterization is correct and "justifiable inferences in [its] favor." *Marino v. Indus. Crating Co*., 358 F.3d 241, 247 (3d Cir. 2004).

*Mountain Information Management, LLC* as an illustrative case. (ECF No. 76 at 6 (citing *225 Long Ave., LLC v. Iron Mountain Info. Mgmt., LLC*, No. A-2441-21, 2024 WL 139130 (N.J. Super. Ct. App. Div. Jan. 12, 2024)).) But this case is distinguishable. The plaintiff in *225 Long Ave.* was a "warehouse facility" where the defendant, an information management company, securely stored "boxes containing [client] records," which were "generating revenue for defendant." *Id.* at 1–2. In that context, the court read "occupy" as referring to the storage of boxes rather than access to the property. *Id.* at *4. Therefore, leaving "more than 1,200 boxes" behind when turning over the keys was a holdover, even if the lessee stopped visiting the warehouse. *Id.* at *2.

A holdover agreement is not the same as a stipulated damages clause. Holdover rent provides "incentive for the tenant to vacate the premises as soon as possible," not an advance estimate of all potential damages a lessor might suffer. *Lorril Co.*, 800 A.2d. at 248. Nothing in the lease agreement suggests the parties agreed to deviate from this understanding of holdover rent.

The Court therefore holds Best Buy cannot recover holdover rent for the three months it took to restore the premises to its original condition.

## IV.  CONCLUSION

For the reasons set forth above, Factory Direct's Motion for Partial Summary Judgment (ECF No. 75) is **GRANTED**. An appropriate Order follows.


Dated: October 14, 2025                      */s/ Brian R. Martinotti*
                                             **HON. BRIAN R. MARTINOTTI**
                                             **UNITED STATES DISTRICT JUDGE**